IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

BETTY T. HARRIS,                              )
                                             )
    Plaintiff,                            )
                                             )
    v.                                    )        CASE NO.  3:04-CV-1075-WKW
                                             )          (WO)
TUSKEGEE-MACON COUNTY                        )
HEAD START,                                  )
                                             )
    Defendant.                            )

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the defendant's Motion for Summary Judgment (Doc. # 12), filed on December 9, 2005, and the defendant's Motion to Strike (Doc. # 19), filed on January 5, 2006.  For reasons to be discussed, the Court finds that the Motion for Summary Judgment is due to be GRANTED, and the Motion to Strike is due to be DENIED.

## I.  FACTS AND PROCEDURAL HISTORY

The facts contained in the parties' evidentiary submissions, viewed in a light most favorable to the non-movant, show the following:

Plaintiff Betty Harris ("Harris") began working with Tuskegee-Macon County Head Start ("Head Start") in 1965.  She was employed there for 39 years, until she was terminated in January 2004.  Harris worked in several different capacities during her employment with Head Start; at the time she was terminated, she was employed as a lead teacher.  While Harris received some positive evaluations of her job performance, she also received negative

feedback from her supervisors and was the subject of several disciplinary actions.  On one occasion, in October 2002, she was temporarily re-assigned from her position as a teacher to work in the Head Start central office, due to tension at the center where she was teaching. Harris asserts that, in 2002 and 2003, she was frequently moved from job site to job site.  She believes that she was treated disrespectfully by her colleagues and supervisors during this time.  Harris received written reprimands on November 7, 2001, and September 11, 2002, for being away from her workplace without permission.  On May 14, 2003, another Head Start teacher filed a complaint against Harris for failing to accompany her students on a field trip.  On December 11, 2003, another Head Start employee filed a complaint against Harris for being absent from her workplace without prior approval and without making arrangements for another staff member to cover her class.

Harris was terminated, effective January 30, 2004, for numerous violations of the Head Start personnel policies.  Harris filed a charge of discrimination with the EEOC on March 11, 2004; she received a right-to-sue letter on August 6, 2004 and filed her Complaint with this Court on November 5, 2004.

## II. JURISDICTION AND VENUE

Because this case arises under 29 U.S.C. § 623 *et seq.,* the Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.  Additionally, the Court finds that the record includes adequate allegations supporting personal jurisdiction and venue.

### III.  SUMMARY JUDGMENT STANDARD

Under Rule 56 (c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Id*. at 323.   The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id*. at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id*. at 324.   To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).   On the other hand, the court must believe the evidence of the non-movant and must draw all

justifiable inferences from the evidence in the non-moving party's favor.    *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).    After the nonmoving party has responded

to the motion for summary judgment, the court must grant summary judgment if there is no

genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56 (c).

## IV.  DISCUSSION

Harris has alleged one count of age discrimination under 29 U.S.C. § 623 *et seq.*, the

Age Discrimination in Employment Act ("ADEA").  The ADEA provides that it is illegal for

an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate

against any individual with respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's age." 29 U.S.C. § 623 (a)(1).

"An employee bringing a claim under the ADEA must prove intentional

discrimination by the employer through one of two methods: presenting direct evidence of

discriminatory intent, or presenting circumstantial evidence of discrimination." *Ashe v.*

*Aronov Homes, Inc.*, 354 F. Supp.  2d 1251, 1258 (M.D. Ala. 2004).  The Eleventh Circuit

has held that, in order to be considered direct evidence, a statement must prove the existence

of discrimination "without inference or presumption." *Wilson v. B/E Aerospace, Inc.*, 376

F.3d 1079, 1086 (11th Cir. 2004) (citations omitted).

Harris claims that Kate LaFayette ("LaFayette"), director of Tuskegee-Macon County

Head Start, told her that she might need "psychological counseling," and that this constitutes

4

direct evidence of discrimination.  Doc. # 16 at 9.  However, it is not clear from the Harris's evidence whether this statement included any reference to her age.  When Harris first described the statement in her Complaint, she stated that she was "subjected to discriminatory remarks . . . including the comment that [she] might need 'psychological counseling,' due to her age." Doc. # 1 at ¶ 8.  By affidavit in her response to the defendant's Motion for Summary Judgment, Harris again quoted LaFayette as saying that "she might need some 'psychological counseling,' due to her age." Doc. # 16  at 4.  However, a few pages later in this same document, Harris presents the quote this way: "That the Plaintiff Harris might need 'psychological counseling due to her age.'" Doc. # 16 at 9.  Further, in Harris' original charge of discrimination that she filed with the EEOC, she quoted LaFayette as saying that she might need "psychological counseling," without putting any other words in quotation marks.  Doc. # 16, Ex.  3.  Because Harris only alleges that LaFayette used the words "due to her age" at the point in her response where she is arguing that this statement constitutes direct evidence, and in view of the fact that Harris' own allegations in other evidentiary filings – indeed, even in the same document – are inconsistent,  the Court finds that the statement in question, merged in its various forms into one most favorable to Harris, would not constitute direct evidence of age discrimination.

Because Harris presents circumstantial, rather than direct, evidence of discrimination, this case is governed by the analysis found in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under this test, the plaintiff has the initial burden of establishing a *prima facie*

case of unlawful employment discrimination by a preponderance of the evidence. *Id*. at 802; *Young v. Gen. Food Corp*., 840 F.2d 825, 828 (11th Cir. 1988). To establish a *prima facie* case, Harris must show that (1) she is a member of the protected age group; (2) she was subjected to adverse employment action; (3) she was qualified for the job; and (4) she was replaced by a younger individual. *See Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000). Head Start does not dispute that Harris has met the first three factors necessary to establish a *prima facie* case. Harris was 58 years old at the time she was terminated, and was qualified to perform her job. Head Start does dispute, however, that Harris was replaced by someone outside the protected age group. Harris claims that she was replaced by Myrtle Anyamore, who was 40 years old at the time. Doc. # 16 at 5. Head Start claims that the plaintiff was replaced by Algerine Harris, who was 62 years old at the time. Doc. # 13 at 5. At this stage, the Court must believe the plaintiff's version of any disputed facts; therefore, the Court finds that Harris has presented evidence sufficient to establish a *prima facie* case of age discrimination.

After the plaintiff has established a *prima facie* case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Chapman*, 229 F.3d at 1024. The employer's burden is "exceedingly light," requiring only that the employer offer evidence that could lead a rational fact-finder to believe the decision was not discriminatory. *Turnes v. AmSouth Bank, N.A*, 36 F.3d 1057, 1061 (11th Cir. 1994). At this stage, the employer has only the burden of production, not of persuasion.

6

*See, e.g., Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-55, 258 (1981); *McDonnell Douglas*, 411 U.S. at 802.  It is not necessary that the court believe the evidence; the court's analysis "can involve no credibility assessment." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).  If the employer is able to satisfy this burden, "'the *McDonnell Douglas* framework – with its presumptions and burdens' – disappear[s] and the sole remaining issue [is] 'discrimination *vel non*.'" *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142-43 (2000) (citing *St. Mary's Honor Ctr.*, 509 U.S. at 113, and *U.S. Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 714 (1983)).

Head Start contends that Harris was fired because she was either absent from her work site or failed to report to work without prior approval on at least four occasions.  Doc. # 13 at 7.[1]  Head Start has presented evidence to document that Harris received reprimands for being away from work without prior approval on November 7, 2001 (Doc. # 13, Ex. C) and September 11, 2002 (Doc. # 13, Ex. H).  Other evidence includes two complaints filed against Harris by other Head Start employees.  One complaint was filed on May 14, 2003 by Algerine Harris, alleging that the plaintiff did not report for a student field trip.  Doc. # 13, Ex. L.  Another was filed on December 11, 2003, by Mary Frank, alleging that Harris was

---

[1] Head Start identified other reasons for Harris' termination (ie., rudeness, failure to report the whereabouts of a student) which are not sufficiently explained in the evidence before the Court. Because Harris has failed to show that Head Start's primary reasons, as discussed further in this opinion, are pretextual, the Court finds no need to consider these additional reasons supplied by the defendant. *See Lewis v. Chattahoochee Valley Community College*, 136 F. Supp. 2d 1232, 1239 (M.D. Ala. 2001) ("The general rule in analyzing discrimination claims based on circumstantial evidence is that when a defendant has articulated several different reasons for an employment action, a plaintiff must demonstrate that *each of the proffered reasons* is unworthy of credence in order to establish pretext.") (emphasis added).

absent from work without receiving prior approval, resulting in a student-to-teacher ratio that was out of compliance with Head Start standards.  Doc. # 13, Ex. O.  Policy number 903:2 of the Tuskegee-Macon County Head Start Program classifies "leaving the work site without permission during working hours" and "failure to report to work without giving proper notice to supervisor" as Class B offenses.  The policy states that "[c]ommission of two (2) Class B Offenses may result in termination." Doc. # 13, Ex. N.  Accordingly, the court finds that the defendant has met its relatively light burden of providing legitimate reasons for Harris' termination.

The burden now shifts back to Harris to demonstrate that the defendant's reasons are merely pretexts.  "[T]o avoid summary judgment [the plaintiff] must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993) (citation omitted).  "A reason is not pretext for discrimination 'unless it is shown both that the reason was false, *and* that discrimination was the real reason.'" *Johnson v. Atlanta Independent School System*, 137 Fed. Appx.  311, 315 (11th Cir. 2005) (unpublished) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 515 (emphasis in original)).  The plaintiff may meet this burden by pointing out "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action." *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004).  The Supreme Court has held that a "plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false,

8

may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S.   at 148.

Harris attempts to show that Head Start's reasons for her termination are pretextual by asserting that the reprimands she received were inaccurate or unfair.  In her affidavits, Harris characterizes the reprimands as: blame "for others mistakes and misconduct" (Doc. # 16, Ex. 1); lies ("I was lied on") (Doc. # 16, Ex. 1); false accusations (Doc. # 16, Ex. 32, ¶ 18); a "false write up by the new comer" (Doc. # 16, Ex. 23); "a figment of [a co-worker's] faulty imagination" (Doc. # 16, Ex. 23); based on "favoritism" (Doc. # 16, Exs. 1 & 23); "wrong conclusions .  .  .  based on [a supervisor's] friendship with the persons involved" (Doc. # 16, Ex. 23); "trumped up" (Doc. # 16, Ex. 32, ¶ 6); part of a "plot to set me up for termination" (Doc. # 16, Ex. 32, ¶ 10); frivolous ("All sorts of frivolous claims and write-ups began to be launched against me") (Doc. # 16, Ex. 32, ¶ 11); and set-ups ("I was set up") (Doc. # 16, Ex. 32, ¶ 15).  Tellingly, Harris candidly admitted in her January 29, 2004 affidavit[2] that " .  .  . I felt that my age became a factor *along with other issues*" (Doc. # 16, Ex. 1) (emphasis added).  The Court finds that the "other issues" far outweigh Harris' inferences of pretext, which are conclusory and weak at best.

For instance,  Harris claims that she did in fact have prior approval to be away from her work site in September 2002 for classes at Auburn University.  Not only does she claim to have had permission from her supervisors to attend class during work hours, she says she

---

[2] This is one of three affidavits of her own testimony that Harris filed as evidence in response to the motion for summary judgment. *See* Doc. # 16, Exs. 1, 23 & 32.

had also provided her supervisors with a copy of her class schedule so they would know where she was at all times.  Doc. # 16  at 5-6.  Harris has presented evidence in the form of a memo from her supervisor dated October 1, 2002, that discusses her work assignment at that time.  Doc. # 16, Ex. 10.  The memo states that Harris "will continue to enjoy liberal release time to attend classes at Auburn University." *Id.*  While this evidence does indicate that Harris' supervisors were aware of and had approved her absence from work to attend classes, the memo does not show that Harris was in fact attending classes on the days in question, or that her supervisors had received prior notice that she would be away from work on those days.[3]  Harris has not presented any evidence to show that this reason offered by Head Start is pretextual.

Harris also contends that she did not miss a field trip on May 14, 2003, as alleged by Algerine Harris.  In an affidavit that appears to be Harris' response to an explanation offered by the defendant after Harris filed an EEOC charge, Harris states that she "never missed a field trip." Doc. # 16, Ex.  23.  Harris does not, however, offer evidence to show that her employer knew or had reason to believe she did not miss the field trip, nor does it appear that Harris ever appealed or otherwise disputed the written report at the time.  Whether or not Harris actually missed the field trip, her burden is to demonstrate that this reason for her

---

[3] Harris submitted as evidence her class schedules from three semesters at Auburn – Spring 2002, Summer 2002 and Spring 2003.  Doc. # 16, Ex. 20.  The absence in question, on September 11, 2002, would have occurred during the Fall 2002 semester, a semester Harris does not claim to have been in school.   Harris has not produced evidence to demonstrate that she was attending class on September 11, 2002, nor has she produced evidence to demonstrate that her supervisors were informed that she would be attending class on that date.

termination is a pretext.  In order to do this, she must show not that the complaint filed against her was erroneous, but rather that Head Start did not believe the complaint.  *See Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) ("The inquiry of the ADEA is limited to whether [the defendant] *believed* that [the plaintiff] was guilty . . . , and if so, whether this belief was the reason behind [the plaintiff]'s discharge.") (emphasis in original).  Harris has not presented evidence to demonstrate that Head Start did not believe the complaint made against her regarding her absence from a student field trip.  Therefore, Harris has failed to show that this proffered reason was a pretext for discrimination.

Finally, Harris argues that she had previously given notice to her supervisor that she would be absent from work on December 9, 2003.  She offers as evidence a memo to Mary Frank ("Frank"), Associate Education Manager, which stated that she would be out on December 9, 2003 for a doctor's appointment.  Doc. # 16, Ex. 12.  Franks' complaint against Harris (Doc. # 13, Ex. O) states that she had received Harris' memo, but that she had not had an "opportunity to approve or disapprove Mrs. Harris' request for leave." Further, the memo states that Harris' assistant had requested the same day off prior to Harris' request.  Doc. # 16, Ex. O.  Harris' position at the time was Lead Teacher; the job description for Lead Teacher states that one responsibility of this position is to "[c]oordinate daily operations and supervise center personnel; maintain child/staff ratio by providing qualified substitutes . . . ." Doc. # 16, Ex. P.  The Lead Teacher is to ensure that "[c]lassrooms are adequately staffed in the event of staff absences." *Id*.  In her complaint against Harris, Frank states that, due to

11

Harris' absence, the student-to-teacher ratio was out of proportion, and Harris had not made arrangements for sufficient staff coverage that day.  Doc. # 16, Ex. O.  While Harris has provided evidence that she gave prior notice that she would be absent from her work site on December 9, 2003, she had not provided evidence that she arranged for her classroom to be adequately staffed in her absence.  Given that such arrangements were part of her job duties at the time, a reasonable employer could find such an occurrence to be cause for disciplinary action.  "[P]rovided that the proffered reason is one that might motivate a reasonable employer, an employee cannot succeed on summary judgment by simply quarreling with the wisdom of that reason." *Lewis,* 136 F. Supp. 2d at 1242 (citing *Chapman*, 229 F.3d at 1030).  Harris, therefore, has not demonstrated that this proffered reason is a pretext for discrimination.

Harris may disagree with Head Start's reasons for terminating her, but she has not produced sufficient evidence to prove that those reasons would not motivate a reasonable employer to terminate an employee.  Harris has not shown that her supervisors did not believe that she had been absent from work without permission or otherwise failed to perform her duties on at least four occasions.  Harris asks this Court to substitute its judgment for that of her employer.  "Federal courts 'do not sit as a super-personnel department . . . .  [O]ur inquiry is limited to whether the employer gave an honest explanation of its behavior.'" *Chapman*, 229 F.3d at 1030 (quoting *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991)).   This Court finds no evidence of

12

"discrimination *vel non*." *Reeves*, 530 U.S. at 143. Because Harris has not demonstrated that the stated reasons for her termination are pretextual, she has not provided sufficient evidence to demonstrate that a disputed issue of material fact exists as to whether her termination was impermissibly based on age.[4] The defendant's Motion for Summary Judgment is therefore due to be granted.

The defendant filed a Motion to Strike Certain Exhibits (Doc. # 19) submitted by the plaintiff. The Court finds no need to consider the evidence included in these exhibits, and therefore finds that the motion is due to be denied as moot.

## V.  CONCLUSION

For the reasons set forth above, it is hereby ORDERED that

1.   The defendant's Motion for Summary Judgment (Doc. # 12) is GRANTED.


2.   The defendant's Motion to Strike (Doc. # 19) is DENIED as MOOT.

3.   The defendant's Motion to Extend Discovery Deadline (Doc. # 26) is DENIED as MOOT.

---

[4] Harris has also alleged that Head Start engaged in a pattern and practice of age discrimination; however, the Court finds that Harris has not produced sufficient evidence to establish this claim. "In a pattern and practice case, plaintiffs must establish by a preponderance of the evidence not only that the employer discriminated against certain individuals, but that 'discrimination was the [employer's] standard operating procedure – the regular rather than the unusual practice.' To meet this burden, plaintiffs must 'prove more than the mere occurrence of isolated or accidental or sporadic discriminatory acts.'" *Hipp v. Liberty Nat. Life Ins. Co.,* 252 F.3d 1208, 1227-28 (11th Cir. 2001) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977)). In support of this claim, Harris has submitted a list of employees which includes their birthdays, along with the Head Start staff assignments from 2004 to 2006. This evidence utterly fails to demonstrate that Head Start discriminated against any individuals or that discrimination was the standard operating procedure.

4.   The pretrial conference set for March 10, 2006 is CANCELED.

5.   The clerk is DIRECTED to remove this case from the April 10, 2006 trial docket.

A final judgment will be entered in accordance with this order.

DONE this the 8th day of March, 2006.

          /s/   W.  Keith Watkins
       UNITED STATES DISTRICT JUDGE